499 So.2d 590 (1986)
James JUSTICE & Marilyn Justice
v.
Jere SYLVESTER, State Farm Insurance Co., Mutual Fire, Marine & Inland Insurance Company, American Cyanamid Company, and the Insurance Company of North America.
No. 86-CA-261.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Rehearing Denied January 16, 1987.
Writ Denied March 26, 1987.
*591 Sandra H. Nathan, Herman S. Kohlman, New Orleans, for plaintiff-appellant.
John F. Colowich, William F. Bologna, New Orleans, Edward P. Lobman, Metairie, for defendant-appellee.
Before BOWES, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an injury suit in which the plaintiffs, Jones Justice and Marilyn Justice seek damages against the defendants, Jere Sylvester and his automobile liability insurer, State Farm Insurance Company and plaintiffs' uninsured, Mutual Fire, Marine and Inland Insurance Company, for injuries they suffered as a result of an accident on September 11, 1982, at Justice's place of employment. Additionally, Justice has sued his employer American Cyanamid for workmen's compensation benefits, wherein he alleges that he was in the course and scope of his employment at the time he was injured. This latter aspect of this lawsuit is still pending.
In the personal injury suit, Justice asserts he was injured on September 11, 1982, at the intersection of Bell and Third Streets within the American Cyanamid Plant, near Waggaman, Louisiana.
Justice was an hourly worker, employed by American Cyanamid. He asserts that when he arrived for his regular shift-period on September 11, 1982, he parked his car in the designated hourly workers' parking lot and proceeded to the main gate area where he punched his time card at approximately 5:25 A.M. As he was walking to his place of work, about one block from the main gate, he was struck by a vehicle owned and operated by Jere Sylvester. The defendant Sylvester was a shift supervisor for American *592 Cyanamid, and he had just completed his shift of employment duty. He was driving his personal automobile (insured by the defendant, State Farm) at the time of the accident. As a shift supervisor, Sylvester was permitted to drive his private vehicle within the fenced-in area inside of the main gate.
Sylvester was a salaried employee and not required to punch a time card and "clock-in" at the main gate. He received no overtime pay and worked a regular 12-hour shift. He was allowed to drive his private vehicle directly to his job site, to a small parking lot that is adjacent to the building where he worked. He reported to a production supervisor who was located in the same building and turned in his paperwork there at the end of his shift. There was no reimbursement by American Cyanamid to him for use of his vehicle.
Furthermore, within the production facility, hourly workers would walk to their building once they clocked in at the main gate. However, if a worker or supervisor had to go from one building to another, there would be company buses or trucks to transport them.
A shift supervisor, such as Sylvester, generally stayed in his building or went to a loading dock in a company vehicle. Although Sylvester was allowed to drive his vehicle onto the production facility area, he was generally not allowed to drive his car around the plant.
When Mr. Sylvester's shift was over, he was to leave directly from his work building and leave the plant site immediately.
After trial, the trial court ruled that plaintiffs exclusive remedy would be workmen's compensation and from this judgment, plaintiffs have appealed.
The central and critical issue to be resolved in this case is, did the trial court err in its interpretation and application of LSA-R.S. 23:1032 relative to whether Jere Sylvester was in the "normal course and scope of his employment" at the time he struck James Justice.
LSA-R.S. 23:1032 reads in pertinent part, as follows:
"The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
Obviously, plaintiffs contend that Sylvester was not engaged at the time of the accident in the "normal course and scope" of his employment. They argue that the trial court incorrectly applied the exclusive remedy clause of LSA-R.S. 23:1032 to invoke the immunity from tort liability.
It was established that Jere Sylvester was finished with his work shift that day and that he was leaving work when this accident occurred.
As a general rule, accidents occurring while an employee is traveling to and from work are not considered as occurring during the course of his employment and are not compensable. Gardner v. Industrial Indemnity Company, 212 So.2d 452 (La. App. 1st Cir.1968).
The case of Guidry v. Chevron U.S.A., Inc., 461 So.2d 625 (La.App. 1st Cir.1984) reiterated the general rule and also lists the exceptions:
1. If the accident happens on the employer's premises;
2. If the employee is deemed to be on a specific mission for the employer;
3. If the employer shows some interest in the employee traveling to and from work by either contractually providing transportation, or reimbursing the employee for his travel expense;
4. If the employee is hurt while traveling to and from one worksite to another;
5. The threshold doctrine, wherein the employee is injured in an area immediately *593 adjacent to his place of employment and that that area contains a distinct travel risk to the employee.
From the record, it is clear that the only conceivable exception that Sylvester could fit in would be the first, did this accident happen on the employer's premises?
The testimony was that when he was finished work, he was to leave his job site immediately.
The evidence is also that Sylvester received no compensation for driving to and from work from American Cyanamid. There is also no doubt that this was his personsl car and his personal insurance.
Sylvester was not traveling from one job site to another, nor was there any evidence that the route Mr. Sylvester took to leave posed any travel risks.
Although Sylvester caused injuries to his co-employee, James Justice, on property owned by their employer, "premises" as previously enunciated by our courts must be construed to mean only that area where the employees are confined during their employment hours when they are engaged in their employer's industry, labor or trades.
Furthermore, we must examine whether the accident is closely connected in time, place and causation to the employment duties of Sylvester as to be considered a risk attribuitable to American Cyanamid's business.
The mere locale of an accident standing alone will not dictate whether tort or workman's compensation should be applied. More importantly, we must determine whether the injury complained of is related in time and place with the functions and duties for which Sylvester was employed. It must be shown that the activity was related to his work. Driving one's private vehicle while leaving work and not subject to the call of duty does not appear to be a work-related activity.
We find that the last paragraph of LSA-R.S. 23:1032, supra, simply means that an employee will be granted immunity from civil liability when he negligently injures a co-employee if, at the time of the injury, he was engaged in the normal course and scope of his employment.
The purpose of R.S. 23:1032 is to protect employers from being personally liable for tort damages when one of their employees is injured through the negligence of a co-employee, who is doing something related to his job.
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Supreme Court enterpreted legislative intent with clarity:
The principal legislative aim of the 1976 amendment was to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict. Although the legislative history is meager, accounts indicate that the amendment was enacted to provide employers relief from the cost of furnishing liability insurance to executive officers and other employees. Malone & Johnson, Workers' Compensation, § 364 in 14 Louisiana Civil Law Treatise 155 (2d ed. 1980); The Work of the Louisiana Legislature for the 1976 Regular Session, 37 La.L.Rev. at 182 (1976). Before the amendment, the absence of a prohibition against tort suits against co-employees allowed injured workers to seek tort recovery from negligent executive officers and their liability insurers. E.g., Canter v. Koehring Co., 283 So.2d 716 (La.1973); Berry v. Aetna Cas. & Surety Co., 240 So.2d 243 (La.App.2d Cir.1970), cert. denied 256 La. 914, 240 So.2d 374, cert. denied 401 U.S. 1005, 91 S.Ct. 1255, 28 L.Ed.2d 541 (1971). This avenue of recovery provoked considerable critical comment. Comment, 33 La.L.Rev. 325 (1973); Note, 34 La.L.Rev. 141 (1973); Note, 46 Tul.L.Rev. 352 (1971); The Work of the Louisiana Appellate Courts, 1973-74 TermInsurance, 35 La.L.Rev. 415, 419 (1975). It was argued that, since the employer's enterprise would in the end pay for the tort remedy, either directly or through insurance premiums for officers and employees, the result would be a denial to the employer of *594 much of the practical advantage of the exclusive remedy provision. W. Malone, Louisiana Workmen's Compensation Law and Practice, 1964 Supp. § 366 (1st ed. 1951). It was apparently for this reason that the legislature acted to close this avenue of recovery by adopting Act 147 of 1976.
In the present case, although Sylvester was still on the "premises" of American Cyanamid, we are convinced that driving his personal car on the way off-of-work is not work related. Sylvester had completed his shift of duty and was in no way in the course and scope of his employment. He was on his route off of work and the injuries to the plaintiff are answerable in tort, not workman's compensation. Accordingly, the judgment of the trial court is reversed and the matter remanded for further proceedings.
Turning our attention to the workmen's compensation aspect of this litigation, we find that American Cyanamid Company and Insurance Company of North America (INA) have appealed the trial court's decision sustaining State Farm's exception of res judicata.
Before service upon INA in the tort/compensation lawsuit, INA filed a subrogation suit against Jere Sylvester seeking recovery of any workmen's compensation benefits paid Sylvester as a result of the accident.
Following service of the tort/compensation lawsuit, INA requested counsel to pursue its subrogation claims by means of a Third-Party Demand in the subject litigation. Counsel for INA was instructed to dismiss the original subrogation suit in light of this proceeding.
INA argues that its counsel inadvertently included in the Motion for Dismissal the words "with prejudice". Accordingly, in response to the Third-Party Demand in the present suit, State Farm filed an exception of res judicata alleging that the dismissal of the subrogation suit was "with prejudice" and had extinguished the rights of INA and Cyanamid to seek recovery of workmen's compensation benefits in the subject lawsuit.
INA argues that counsel's use of a form which included the words "with prejudice" was clearly an inadvertent error from which State Farm seeks to take advantage via its exception of res judicata.
We reverse, and hold that the evidence clearly demonstrates that the dismissed matter was not actually litigated nor finally adjudged.
In order to determine whether the dismissal, with prejudice, of the subrogation suit would give rise to the affirmative defense of res judicata, it is necessary to determine what was at issue, and what was actually decided in the dismissed lawsuit.
In Sewell v. Argonaut Southwest Insurance Company, 362 So.2d 758 (La.1978), the Supreme Court held that:
"The theory of civilian res judicata is that matters actually litigated and finally adjudged are presumed correct and, thus, should not be contradicted in a subsequent suit.... Thus, when a litigant poses a plea of res judicata, the Court must examine not only the pleadings, but also the record in the first suit, to determine whether the availability of the particular form of relief sought in the second suit was actually ruled upon."
The record is void of sufficient evidence proving the dismissed subrogation suit was resolved because of any compromise or settlement reached between INA and Jere Sylvester which would serve as a basis for the dismissal.
We are convinced after careful review of the record that there was never any intention of prejudicing the legal rights of Cyanamid and INA by dismissing the separate subrogation lawsuit.
In Thompson v. Bank of New Orleans and Trust Co. 422 So.2d 230, 231 (La.App. 4th Cir.1982), the court noted that the doctrine of res judicata is applicable where a dispute between parties has been compromised or settled. The policy underlying this application of the doctrine of res judicata *595 is based upon the principle that "transactions have, between interested parties, a force equal to the authority of things adjudged". La.C.C., Article 3078.
We agree with INA's argument and hold that the Motion of Dismissal was inadvertently styled, "with prejudice", and has no significant legal effect because it was not predicated upon any valid contractual or transactional basis.
Accordingly, the trial court's decision sustaining the Exception of Res Judicata is reversed and the Third Party Demand of American Cyanamid and INA is reinstated and the entire matter is remanded for further proceedings, consistent with the views expressed herein.
All costs of this appeal to await the final disposition of this case.
REVERSED AND REMANDED.
BOWES, J., concurring with written reasons.
BOWES, Judge, concurring.
Although I concur in the decision to reverse and remand this case to the trial court, I am of the opinion that some of the language used by my respected brothers in the majority opinion is too broad.
The opinion states: "... `premises' as previously enunciated by our courts must be construed to mean only that area where the employees are confined during their employment hours when they are engaged in their employer's industry, labor or trades"and I note no legal authority is given for this statement.
In my view, this expression of opinion should be confined to the facts of this particular case. Otherwise, in my opinion, the word "area" could easily be construed to be the building within which the employee is confined and, under such interpretation, it could be held that an employee who is injured outside of the buildingyet still on property owned or occupied by the employeris not on the "premises" when injured and thus not covered by Worker's Compensation.