991 So.2d 23 (2008)
Vicki POPULIS, As Widow of Cleveland Populis
v.
The HOME DEPOT, INC.
No. 2007 CA 2449.
Court of Appeal of Louisiana, First Circuit.
May 2, 2008.
*24 Ben E. Clayton, Slidell, LA, for Claimant/Appellant Vicki Populis.
M. Blake Monrose, Lafayette, LA, for Defendant/Appellee The Home Depot, Inc.
Before PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Claimant-appellant, Vicki Populis, appeals the grant of summary judgment by the Office of Workers' Compensation (OWC) in favor of defendant-appellee, The Home Depot, Inc. (Home Depot), dismissing her claims for workers' compensation benefits as a result of the death of her husband, Cleveland. We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND
On April 17, 2006, Cleveland Populis was working at a Home Depot store in Covington, Louisiana, when he fell from a ladder and sustained injuries. He was transported by ambulance to St. Tammany Parish Hospital. After his arrival but before he was able to be fully evaluated by hospital personnel, Mr. Populis's heart failed and he died. His widow filed this disputed claim, seeking workers' compensation death benefits from Home Depot.
Home Depot answered, denying Mrs. Populis's claim to death benefits, and subsequently filed a motion for summary judgment. After a hearing, OWC rendered a summary judgment in favor of Home Depot and dismissed Mrs. Populis's claim. She appeals.

DISCUSSION
The applicable standard of review is de novo, using the same criteria used by the trial court in deciding whether summary judgment should be granted. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Young v. Capitol Concrete Products, Inc., 02-1822, pp. 2-3 (La.App. 1st Cir.6/27/03), 858 So.2d 513, 515, writ denied, 03-2095 (La.11/7/03), 857 So.2d 498. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
*25 A motion for summary judgment which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2). Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Young, 02-1822 at p. 3, 858 So.2d at 516.
In general, dependents of an injured employee are entitled to receive benefits for any injury that arises in the course and scope of employment, which results in the death of the employee. See La. R.S. 23:1031 and 1231; Osborn v. Unit Drilling Co., 04-0014, p. 2 (La.App. 1st Cir.6/25/04), 886 So.2d 495, 496, writ denied, 04-1779 (La.10/15/04), 883 So.2d 1062. The claimant bears the burden of establishing a causal connection between the employment accident and the resulting death by a reasonable preponderance of the evidence. Id., 04-0014 at p. 2-3, 886 So.2d at 496.
When the employee's death is the result of a heart-related or perivascular injury arising out of and in the course of employment, the general requirements do not apply, and the claim is governed by La. R.S. 23:1021(8)(e), which provides:
A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.[1]
The statute restricts such compensable heart-related deaths and injuries to those arising out of physical work stress in the job environment. Hatcherson v. Diebold, Inc., 00-3263 (La.5/15/01), 784 So.2d 1284, 1290-91. La. R.S. 23:1021(8)(e) also imposes on the claimant the heightened burden of proof by clear and convincing evidence, which is intended to exclude from coverage an employee who just happened to have a heart attack while performing his job. Hood v. Metro Industrial Corp., 00-2158, p. 4 (La, App. 1st *26 Cir.12/28/01), 806 So.2d 848, 851, writ denied, 02-0947 (La.9/30/02), 825 So.2d 1185.
The Louisiana Supreme Court has recognized that not all cases in which the employee suffers a heart-related or perivascular injury fall within the scope of La. R.S. 23:1021(8)(e). Specifically, the supreme court noted that La. R.S. 23:1021(8)(e) was not intended to apply to those "heart-related" or "perivascular" injuries that directly result from some physical impact that arises out of and is incurred in the course and scope of employment. Osborn, 04-0014 at p. 4, 886 So.2d at 497 (citing Charles v. Travelers Insurance Co., 627 So.2d 1366, 1371 n. 15 (La.1993)). In those cases, the claims for workers' compensation benefits are analyzed under general workers' compensation principles. Osborn, 04-0014 at p. 4, 886 So.2d at 497.
In this appeal and for purposes of summary judgment, Home Depot concedes all the facts as alleged by Mrs. Populis. Therefore, the employer does not dispute that Mr. Populis fractured his ankle and his hemi-pelvis when he fell from the ladder at work. It is also undisputed that Mr. Populis had a preexisting heart condition, which had required the placement of a stent in one of his coronary arteries in 2004.[2]
In support of its prima facie showing, Home Depot offered the deposition of Dr. Peter Galvan, the coroner for St. Tammany Parish, whose office performed an autopsy on Mr. Populis. He testified that Mr. Populis's death was a result of a heart attack caused by blockages of the major blood supply to the heart. Dr. Galvan explained that it was Mr. Populis's genetic predisposition to develop cholesterol deposits in the arteries that ultimately gave rise to the fatal heart attack. On the death certificate, Dr. Galvan listed atherosclerotic cardiovascular disease as the cause of death.
With Dr. Galvan's testimony, Home Depot sustained its initial burden of making out a prima facie case, showing it was entitled to summary judgment. If, as Dr. Galvan opines, a trier of fact were to conclude that Mr. Populis's genetic predisposition for developing cholesterol deposits in the arteries was the predominant and major cause of his heart attack, Mrs. Populis's claim for benefits would be excluded under La. R.S. 23:1021(8)(e)(ii). Thus, the burden shifted to Mrs. Populis to present evidence demonstrating genuine issues of material facts sufficient to support a finding that Mr. Populis's heart-related death either falls within the ambit of La. R.S. 23:1021(8)(e) or that it directly resulted from some physical impact that arose out of and was incurred in the course and scope of employment.
Home Depot urges that a review of the record shows only that the pain associated with the fractures to Mr. Populis's ankle and hemi-pelvis when combined with his preexisting heart condition caused his death. Therefore, Home Depot urges, because it was mental stress of the pain that was the catalyst for the heart failure and not any extraordinary and unusual physical work stress that led to his death, Mrs. Populis's claim for benefits is excluded under La. R.S. 23:1021(8)(e).
*27 Mrs. Populis offered the deposition testimony of Dr. Clement Eisworth, Jr., a cardiologist who did not have the benefit of ever seeing Mr. Populis but reviewed the medical records. Dr. Eisworth stated that Mr. Populis clearly died from an arrhythmia, which occurs when the heart stops beating or has a very unstable rhythm. He could not determine whether Mr. Populis had an acute heart attack or if he developed a true arrhythmic event and, without a heart attack, died. He opined that more probable than not the pain and discomfort associated with the hemi-pelvic and ankle fractures precipitated the primary cardiac arrhythmia, which resulted in Mr. Populis's death. In a more detailed articulation of his opinion, Dr. Eisworth explained that when a patient is under pain from an injury, it can lead to an increase in epinephrine (the "fight-or-flight" hormone), which results in an increase in blood pressure and may increase heart rate. According to Dr. Eisworth, the increase in epinephrine causes platelets in the blood to become stickier and more active, which can predispose a patient to a life-threatening arrhythmia. Dr. Eisworth believed the injuries to the hemi-pelvis and ankle caused the death because, with the physiological stress, and the release of epinephrine, together with Mr. Populis's underlying cardiac condition, it triggered the primary cardiac arrhythmia. Because Mr. Populis had been functioning without any complaints or active complications associated with his preexisting heart condition, it was Dr. Eisworth's opinion that more likely than not the injuries Mr. Populis sustained when he fell from the ladder (particularly the fracture of the hemi-pelvis which can be painful and result in blood loss) played a role in his death. Dr. Eisworth stated that without the accident, Mr. Populis would not have died on April 17, 2006. In response to questions indicating that Mr. Populis was joking and laughing as he waited on the ambulance at the Home Depot store, Dr. Eisworth explained it did not mean Mr. Populis was not under some physiological stress. Mr. Populis's hormone levels could have been elevated even if he was not complaining of pain. Additionally, we note that although in his opinion it was not probable, Dr. Galvan conceded that it was possible that the fractures to Mr. Populis's ankle and hemi-pelvis were instrumentalities in his death.
Based on the testimony of Dr. Eisworth, we find that Mrs. Populis has offered evidence to support a finding that the heart-related death directly resulted from some physical impact that arose out of and was incurred in the course and scope of employment. In light of the evidence contained in this record and the concessions of fact defendant made for purposes of summary judgment, we conclude Mrs. Populis has shown genuine issues of material fact remain. OWC erred in granting Home Depot's motion.[3]

DECREE
For these reasons, we reverse OWC's grant of summary judgment and its dismissal of Mrs. Populis's claims for workers' compensation death benefits. Appeal costs are assessed to The Home Depot, Inc.
REVERSED AND REMANDED.
NOTES
[1] Pursuant to the statutory revision authority of the Louisiana State Law Institute, in 2004, paragraph (8) was merely redesignated to appear alphabetically; thus jurisprudence interpreting former La. R.S. 23:1021(7)(e) is applicable to the present version of paragraph (8).
[2] The undisputed evidence also establishes that four days before his death, Mr. Populis had been in a car accident, where his chest sustained an impact. The medical experts for Home Depot and Mrs. Populis testified that their respective evaluations did not support a finding that the car accident had any role in the heart failure that caused Mr. Populis's death. Home Depot does not rely on the car accident to support its assertion of entitlement to a summary judgment, and therefore, this fact is of no moment for purposes of our review.
[3] According to Dr. Galvan, the initial notes taken by hospital personnel upon Mr. Populis's arrival indicated that his vital signs were in the normal range. The record does not contain any evidence to support that statement, and since Home Depot conceded "the opinion of [Mrs. Populis's] expert cardiologist," we do not consider what impact that evidence would have had in our review.